**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-20317-JAL**

JOSE SUAREZ AND JOSE CANTO,

      Plaintiffs,

v.

THE BAYFRONT PARK MANAGEMENT
TRUST, INC., JOE CAROLLO, AND JAVIER
BANOS,

      Defendants.

_____/

**<u>DEFENDANT, THE BAYFRONT PARK MANAGEMENT TRUST, INC.'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

Defendant, The Bayfront Park Management Trust, Inc. (the "Trust"), pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss the Complaint (ECF No. 1) (the "Complaint") by Plaintiffs, Jose Suarez ("Suarez") and Jose Canto ("Canto").

## I.       Preliminary Statement.

Plaintiffs' claims against the Trust for First Amendment retaliation under 42 U.S.C. § 1983 and for violation of Florida's Whistle-blower's Act, Florida Statutes, § 112.3187, *et seq.* ("FWA"), and Canto's claim for an accounting, fail to state a claim and must be dismissed.

Each Plaintiff fails to state a claim against the Trust for First Amendment retaliation (Counts 1 and 3) for several reasons. *First*, each Plaintiff fails to state a claim against the Trust, a municipal agency and instrumentality, because he fails to allege a municipal custom or policy that led to the alleged constitutional violation. *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978). *See* § IV, *infra*. *Second*, each Plaintiff fails to satisfy the first element of a First Amendment retaliation claim requiring he adequately allege that he engaged in protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) ("a plaintiff must establish first, that his speech or act was constitutionally protected…"). *See* § V, *infra*. *Third*, each Plaintiff fails to allege that he spoke as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties."). *See* §§ V, VI, *infra*. *Fourth*, each Plaintiff fails to satisfy the second element requiring that Defendant's conduct adversely affect his protected speech. *See* § VII, *infra*. *Fifth*, each Plaintiff fails to satisfy the third element requiring a causal connection between the retaliatory action and the adverse effect on speech. *See* § VIII, *infra*.

Each Plaintiff fails to state a claim for FWA violation (Counts 2 and 4) because he fails to allege (i) he exhausted his administrative remedies, a statutory prerequisite, § 112.3187(8)(b), *see*

1

§ IX, *infra*, and (ii) the statutory requirements of § 112.3187(4), (5), (6), and (7), *see* § X, *infra*.

Each Plaintiff's claim for constructive discharge fails because, *inter alia*, he has not adequately alleged his working conditions were "so intolerable that a reasonable person in [her] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). *See* § XI, *infra*.

Finally, Canto lacks standing to sue for an accounting (Count 5). *See* § XII, *infra*. *Solares v. City of Miami*, 166 So. 3d 887 (Fla. 3d DCA 2015).

Ultimately and fatally, Plaintiffs' Complaint relies on conclusory, hyperbolic terms including "steal", "theft", "illegal", "kickbacks", "corruption" and "self-dealing" in lieu of sufficient factual allegations to state a claim. *See* ECF No. 1 at 1-2, ¶¶ 13-76. "Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss." *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1173 (S.D. Fla. 2022). Sprinkling in such conclusory terms does not change the fact that Plaintiffs fail to state a cause of action for First Amendment and FWA retaliation. Therefore, the Court should exercise its gatekeeping role and dismiss the Complaint. *See, e.g.*, *Davis v. Fresh Mkt., Inc.*, 2020 WL 3489369, at *4 (S.D. Fla. June 26, 2020) (dismissing complaint based on finding of failure to state plausible claim).

**II.      Legal standard in determination of motion to dismiss under Rule 12(b)(6).**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory statements, assertions or labels are insufficient. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court is not required to accept legal conclusions. *Id.* Factual allegations

2

must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. The court is to make reasonable inferences in the plaintiff's favor, but is not required to draw the plaintiff's inference. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Unwarranted deductions of fact are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. *Id.*

The Eleventh Circuit has endorsed a two-pronged approach in applying these principles: (1) eliminate allegations that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Accordingly, the Court is the gatekeeper to dismiss complaints which fail to state a plausible cause of action, as in this case. *See, e.g.*, *Davis*, 2020 WL 3489369, at \*4.

### III. Each Plaintiff's alleged speech fails to state a cause of action.

Each Plaintiff merely alleges that he made "certain disclosures":

> 89. During his term as the Executive Director of Bayfront Park, Mr. Suarez participated in investigations by local government agencies; and **made certain disclosures** to local government agencies and officials including to Miami Police Department, the Chairman, the Board of Trustees, and the Assistant City Attorney assigned to the Trust.[1]

> 112. During his term as the Director of Finance at Bayfront Park, Mr. Canto **made certain disclosures** to local government agencies and officials, including to the Chairman, the Board of Trustees, and the Assistant City Attorney assigned to the Trust.[2]

*See* ECF No. 1 ¶¶ 89, 112 (emphasis added). Each Plaintiffs' allegation that he made "certain disclosures" is inadequate to state a claim for First Amendment and FWA retaliation.

Suarez as the Executive Director and Canto as the Director of Finance of the Trust allege

---

[1] The allegations in ¶ 89 (First Amendment retaliation) are repeated verbatim in ¶ 99 (FWA).
[2] The allegations in ¶ 112 (First Amendment retaliation) are repeated verbatim in ¶ 122 (FWA).

that, in carrying out their official duties, they learned or discovered the following matters:

> Unpermitted electric work by a food truck at Bayfront Park (ECF No. 1 ¶¶ 11-21); Inadequate accounting and auditing systems of the Trust, including lack of controls, lack of documentation, large expenditures, and waste (*see* ECF No. 1 ¶¶ 25-62); Parking lot fees collected by the Trust in cash (*see* ECF No. 1 ¶¶ 22-24); and Storage by the Trust of boxes of medicines including controlled substances from a mobile veterinary van belonging to the Trust (*see* ECF No. 1 ¶¶ 48-55).

*See* ECF No. 1 ¶¶ 11-62. However, neither Plaintiff adequately alleges that he disclosed these matters to anyone. For purposes of responding to the Complaint, even assuming that these matters Plaintiffs allegedly learned or discovered in the course of their employment were disclosed, the Complaint fails to plausibly state a cause of action for First Amendment and FWA retaliation.

**IV.   Each Plaintiff fails to state a First Amendment retaliation claim because he fails to allege the Trust had a custom or policy that caused the violation.**

Each Plaintiff fails to state a claim for municipal liability under *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978), and its progeny.

**a.   Plaintiffs allege that the Trust is an agency of the City.**

Plaintiffs allege that the Trust is a limited agency and instrumentality of the City pursuant to the City of Miami Code. *See* ECF No. 1 ¶¶ 3, 88 and 111 (quoting City of Miami Code Article III § 38-101 ("There is hereby created and established a limited agency and instrumentality of the city to be known as the 'Bayfront Park Management Trust.'")). As such, *Monell* applies.

**b.   The Complaint fails to state a claim against the Trust.**

The Trust is being sued under the doctrine of *respondeat superior* for alleged actions of two of its ten unpaid trustees, Joe Carollo and Javier Baňos. *See, e.g.*, ECF No. 1 ¶¶ 4, 5, 94, 117. As an instrumentality of the City, the Trust cannot be liable for its trustees' actions because the Complaint fails to allege the Trust had a custom or policy that caused the alleged violation, contrary to the *Monell* requirements. *See Holland v. City of Auburn*, 657 Fed. Appx. 899, 902 (11th Cir.

4

2016) (court affirmed dismissal of claims against municipality where plaintiff "failed to assert a specific policy or custom that led to the alleged violations"); *Gomez v. City of Doral*, 2020 U.S. Dist. LEXIS 88268, *6-9 (S.D. Fla. May 18, 2020) (court dismissed First Amendment retaliation claim against municipality for failure to adequately allege a custom or practice). Accordingly, as a matter of law, Counts 1 and 3 against the Trust for First Amendment retaliation should fail.

The pleading requirements to satisfy *Monell* are well-established. As set forth by the Eleventh Circuit in *Holland*, 657 Fed. Appx. at 905:

> Municipalities are not subject to respondeat superior or vicarious liability under § 1983; rather, there are strict limitations on municipal liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Here, Plaintiff's municipal liability claims against the City fail because Plaintiff has not demonstrated that he suffered a constitutional violation. *See Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002). Furthermore, Plaintiff failed to sufficiently plead any policy or custom in the City's training, hiring, or screening practices that caused the alleged constitutional violation.

*See also Gomez*, 2020 U.S. Dist. LEXIS 88268, at *7 ("Here, the Court finds that Plaintiff fails to allege a persistent and widespread practice of terminating law enforcement officers based on their political association with Council Member Ruiz", "Plaintiff only makes conclusory allegations regarding any such custom or practice by the City"); *Lewis v. City of Marietta*, 2023 U.S. App. LEXIS 31423, *6-7, 2023 WL 8234291 (11th Cir. 2023) (affirming dismissal of § 1983 claims against city based in part on failure "to allege a direct causal link between the City's policy or custom and the alleged constitutional violation").

As in these cases, Suarez and Canto fail to allege that the Trust had a custom or policy that caused the alleged violation, and therefore dismissal of their constitutional claims is required.

## V. Each Plaintiff fails to adequately allege that he engaged in protected speech.

To state a First Amendment retaliation claim based on speech, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett*, 423 F.3d at 1250.

### a. Each Plaintiff fails to specify his own alleged protected speech.

Each Plaintiff fails to satisfy the first element of his First Amendment retaliation claim, because each fails to specify his alleged protected speech. *Bennett*, 423 F.3d at 1250 ("a plaintiff must establish first, that his speech or act was constitutionally protected…").

Here, as set forth above, the alleged speech is not adequately alleged. Each Plaintiff alleges that he made "certain disclosures" but neither Plaintiff alleges what he supposedly said. *See* ECF No. 1 ¶¶ 89, 112. Plaintiffs' vague allegations that they made "certain disclosures" are merely "conclusory assertions" that do not include "the contents of Plaintiff's statements". That is insufficient to state a First Amendment retaliation claim. *See, e.g.*, *Gomez*, 2020 U.S. Dist. LEXIS 88268, at *9 (dismissing First Amendment retaliation claim because it "simply does not include any factual allegations regarding the content of Plaintiff's statements or the nature of the investigations in which they were made, instead relying on conclusory assertions such as the statements 'implicated Chief Gomez' and 'set forth [his] alleged impropriety.'"). *See also Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 881-882 (6th Cir. 2024) (internal citation and quotations omitted) ("The claim fails for a more basic reason. An employee must have engaged in protected speech to establish a First Amendment retaliation claim. What was Blick's protected speech? We have no idea. Her opening brief asserted that she made numerous attempts to exercise her First Amendment rights without identifying any past speech with specificity.").

6

In addition to the lack of allegations as to **what** each Plaintiff said, each Plaintiff fails to allege **when** they allegedly said it (the date), **where** (*i.e.*, at the Trust office), **how** (*i.e.*, by office email, office telephone, face to face), and to **who** (the name of anyone). Simply put, it is entirely unclear who allegedly said what to who. Moreover, Suarez and Canto's *identical* vague allegation that each "made certain disclosures" to unidentified persons fails to satisfy the requirement that "he himself" must have engaged in constitutionally protected activity.[3]

### b.  Each Plaintiff's claim fails because he did not speak as a private citizen.

Plaintiffs' alleged speech was not protected. A public employee's speech pursuant to his official duties is not protected and cannot serve as a basis for a First Amendment retaliation claim. *See Garcetti*, 547 U.S. at 426 ("We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties."); *Lane*, 573 U.S. at 240 ("The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.").

In *Moss v. City of Pembroke Pines*, 782 F.3d 613, 616 (11th Cir. 2015), the court affirmed an order granting judgment as a matter of law and holding plaintiff's First Amendment retaliation claim failed because an assistant fire chief's speech was not protected as it was made in furtherance of his official responsibility to ensure a pension was administered in accordance with an ordinance. *Id.* at 619-620. The court in *Moss*, 782 F.3d at 617-618, explained the applicable analysis:

> Plaintiff's First Amendment claim is governed by a four-stage analysis. *See Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013). First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated "a matter of public concern." *Id.* at 1168-69 (quoting *Rankin v. McPherson*, 483 U.S. 378,

---

[3] *See, e.g.*, *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991) (affirming dismissal and holding individual's retaliation claim "fails at the outset because he himself has not engaged in conduct deserving of first amendment protection" where corporation, not individual, engaged in protected activity); *Lilly v. Town of Lewiston*, 2019 WL 2501555, at *5 (W.D.N.Y. June 17, 2019) (granting dismissal, "Plaintiff has not alleged that he himself engaged in any protected activity.").

384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)) (internal quotation marks omitted). If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote "the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)) (internal quotation marks omitted). The above two issues are questions of law that are decided by the court. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006). The court's resolution determines whether Plaintiff's speech is protected by the First Amendment. *Id.*

In order to "meet the threshold for proving a First Amendment violation" a public employee must show "he spoke in his capacity as a citizen, rather than as an employee." *Id.* at 618. "The central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Id.* (quoting *Garcetti*, 547 U.S. at 421). The employee's job description may be relevant and the "proper inquiry is a practical one." *Id.* (quoting *Garcetti*, 547 U.S. at 424).

Here, the "first threshold requirement" is not met. Based on each Plaintiff's allegations of his job description, in addition to the statutory job description of Suarez's position, the alleged speech was made by each Plaintiff in his official capacity pursuant to his official job duties, not as a private citizen, and the speech concerned matters such as Trust management and operations.

> **i.  As the Executive Director, Suarez had broad executive and administrative responsibility and supervision for the management and operation of the Trust including all Trust properties, activities, and facilities, and his alleged speech falls within his job duties.**

Based on Suarez's own pleading, he expressly admits that his alleged disclosures were made within his capacity as the Executive Director (*see* ECF No. 1 ¶¶ 89, 93, 99 (emphasis added)):

> *During his term as the Executive Director of Bayfront Park, Mr. Suarez participated in investigations by local government agencies; and made certain disclosures* to local government agencies and officials including to Miami Police Department, the Chairman, the Board of Trustees, and the Assistant City Attorney assigned to the Trust.
> *The statements and disclosures* did not disrupt the function of the Bayfront Trust, but rather *were in furtherance of the Trust's interests as the Executive Director, "as the chief executive officer of the trust[.]" City Charter and Code, Chapter 38, Article III § 38-105.*

Suarez thus concedes the alleged speech was made within his official capacity and duties, which should end this inquiry and result in dismissal with prejudice.

As the former Executive Director of the Trust (*see* ECF No. 1 ¶ 1), Suarez's broad duties are expressly set forth in Section 38-105 of the City of Miami Code (emphasis added):

> The executive director shall act as the chief executive officer of the trust.  Subject to the policy directives of the trust, *the executive director shall have general supervision over and be responsible for the management and operation of all trust properties, activities, and facilities*.  The executive director shall execute all contracts in behalf of the trust after approval by the board.  The executive director shall attend all meetings of the trust, shall furnish the trust a quarterly report with respect to *the management, operation, and maintenance of the park, and the financial condition of the trust*, and shall from time to time have prepared and shall furnish such reports, audits and other information relating to the park and to said trust as may be required by the trust or the city.

*See* ECF No. 1 ¶ 93. The purpose of the Trust itself is also broadly defined: to "direct, operate, manage and maintain *all aspects* of the city-owned property known as Bayfront Park". *See* City of Miami Code § 38-102 (emphasis added).

During Suarez's tenure as the Executive Director of the Trust (March-December 17, 2024), he was the highest-ranking employee and he had broad executive and administrative duties over the Trust. *See* ECF No. 1 ¶¶ 10, 78. In his capacity as the Executive Director, Suarez had "general supervision over and [was] responsible for the management and operation of all trust properties, activities, and facilities." *See* City of Miami Code § 38-105. Suarez alleges that it was within his broad job duties as the Trust's Executive Director to supervise and be responsible for the management, operation, and maintenance of the park, to review Trust accounting documents including those relating to checks, invoices, expenditures, payments, wires, revenue, and expenses, to request documents supporting expenditures, to question expenditures, to raise concerns regarding irregularities, lack of controls, waste of funds, and accounting errors and issues, and to

9

bring transparency and ethics to the Trust. *See* ECF No. 1 ¶¶ 11-64. Suarez alleges that as Executive Director, he was in charge of considering and implementing "changes necessary to fix the accounting issues and increase transparency". *See* ECF No. 1 ¶ 26.

Suarez fails to adequately allege the protected speech. Rather, Suarez alleges he made "certain disclosures." *See* ECF No. 1 ¶¶ 89. However, assuming the alleged disclosures concerned unpermitted work, changing the Trust's method of collecting fees, changing the Trust's accounting and auditing practices, and the Trust's storage of medicines (*see* ECF No. 1 ¶¶ 11-62), each of these falls within Suarez's capacity as Executive Director of the Trust based on his statutory responsibilities and his own allegations. *See* City of Miami Code § 38-105; ECF No. 1 ¶¶ 11-64.

Based on the Code and his allegations, all matters alleged by Suarez fall within his broad authority and he reported information he learned and discoveries he made solely to his superiors in the chain of command, including the attorney for the Trust and members of the Board of Trustees, and in connection with his participation as the Trust's Executive Director in an investigation by local government agencies. *See* ECF No. 1 ¶¶ 50-53, 89, 99.

"The central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Moss*, 782 F.3d at 618 (quoting *Garcetti*, 547 U.S. at 421). Here, there are no allegations supporting a claim that Suarez spoke as a private citizen, and the alleged disclosures concerned Trust operations within Suarez's broad job duties and responsibilities. Each of the alleged disclosures "owes its existence" to Suarez carrying out his professional responsibilities as the Executive Director. *See* City of Miami Code § 38-105; ECF No. 1 ¶¶ 11-64.

Based on Suarez's own allegations, he spoke, if at all, pursuant to his official job duties, the purpose of his speech was related to his job, and he spoke privately to his superiors at the Trust, and other government officials pursuant to an investigation occurring in furtherance of his job.

*See, e.g.*, *King v. Bd. of Cty. Comm'rs*, 916 F.3d 1339, 1345, 1350 (11th Cir. 2019) ("King spoke pursuant to her official job duties, the purpose of her speech was work-related, and she never spoke publicly. … King's speech … was made privately and precisely to the appropriate persons in her chain of command."); *Batz v. City of Sebring*, 794 Fed. Appx. 889, 890-891 (11th Cir. 2019) (citing *King*, 916 F.3d at 1349) ("We further note that, like King, Batz never appears to have engaged in speech outside of his work. At the very least, he made no effort to communicate his safety concerns to the public or otherwise communicate with anyone outside other government officials.").[4]

> **ii.  As the Director of Finance, Canto alleges he had broad responsibility to advise the Trust and implement changes necessary to fix accounting issues and increase transparency at the Trust, and his alleged speech falls within his job duties.**

Canto expressly admits that his alleged disclosures were made within his capacity as the Director of Finance of the Trust, as follows (*see* ECF No. 1 ¶¶ 112, 122, 116 (emphasis added)):

> *During his term as the Director of Finance at Bayfront Park, Mr. Canto made certain disclosures* to local government agencies and officials, including to the Chairman, the Board of Trustees, and the Assistant City Attorney assigned to the Trust.
> The statements and disclosures did not disrupt the function of the Bayfront Trust, but rather *were in furtherance of the Trust's interests as the Director of Finance.*

Canto thus concedes that the alleged speech was made within his official capacity and duties, which should end this inquiry, and result in dismissal with prejudice.

Canto alleges as Director of Finance in April-December 2024, he was hired to "help advise on, and implement, the changes necessary to fix the accounting issues and increase transparency" at the Trust. *See* ECF No. 1 ¶ 26. Canto alleges it was within his broad job duties to review Trust accounting documents including those relating to checks, invoices, expenditures, payments, wires,

---

[4] Plaintiffs set forth no facts in connection with a passing reference to any alleged statement by either Plaintiff "to the public". *See* ECF No. 1 ¶¶ 91, 114. Said conclusory mention is insufficient to state a cause of action based on alleged protected speech. *Perez*, 629 F. Supp. 3d at 1173.

revenue, and expenses, to request documents supporting expenditures, to question expenditures, to raise concerns regarding irregularities, lack of controls, waste of funds, and accounting errors and issues, and to bring transparency and ethics to the Trust. *See id.* ¶¶ 26-64, 73.

"The central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Moss*, 782 F.3d at 618 (quoting *Garcetti*, 547 U.S. at 421). Here, there are no allegations supporting a claim that Canto spoke as a private citizen, and the alleged disclosures concerned Trust operations within Canto's broad job duties. Each of the alleged disclosures "owes its existence" to Canto carrying out his professional responsibilities as the Director of Finance based on his own allegations of the scope of his professional responsibilities. *See* ECF No. 1 ¶¶ 26-64, 73.

**VI.   Each Plaintiff's alleged speech was not made as a private citizen, and therefore it does not merit application of the *Pickering* analysis.**

As set forth above, Suarez and Canto did not engage in protected speech because they did not speak as private citizens. Accordingly, their alleged speech does not merit application of the *Pickering* analysis. As set forth in *Cotriss v. City of Roswell*, 2022 U.S. App. LEXIS 17941, *22-23, 2022 WL 2345729 (11th Cir. June 29, 2022):

> As a threshold matter, "[t]o qualify as constitutionally protected speech in the First Amendment[] government employment retaliation context," that merits application of the *Pickering* analysis, "the speech must be made by a government employee speaking as a citizen and be on a subject of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1342-43 (11th Cir. 2007) (per curiam) (emphasis omitted). This is because the "Constitution does not insulate" a government employee's "communications from employer discipline" when a government employee makes "statements pursuant to [her] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); *accord Boyce*, 510 F.3d at 1342.

The Complaint does not plausibly allege either Plaintiff was disciplined as a result of protected speech as a private citizen. Rather, the alleged speech involved administrative and operational issues of the Trust within Plaintiffs' job duties including unpermitted work at the Park,

changing the Trust's method of collecting fees, accounting and auditing practices, and the Trust's storage of medicines. Alleged disclosures about these matters by Suarez were solely to his superiors in the chain of command, including the attorney for the Trust and members of the Board of Trustees, and in connection with his participation as the Executive Director in an investigation by local government agencies. Alleged disclosures by Canto were solely to his superiors in the chain of command, including the attorney for the Trust and members of the Board of Trustees.

**VII.  Each Plaintiff fails to satisfy the second element requiring that Defendant's conduct adversely affect his protected speech.**

Each Plaintiff fails to adequately allege that the Trust's "retaliatory conduct adversely affected the protected speech". *See Bennett*, 423 F.3d at 1250. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1255. Plaintiffs do not allege they were deterred or chilled in the exercise of protected activity by alleged retaliatory conduct of the Trust. Moreover, Plaintiffs fail to state a claim against the Trust for its own alleged retaliatory conduct as they fail to satisfy *Monell*. None of the requirements are met, as set forth herein, *see* § IV (citing *McDowell*), *supra*. Having failed to state a First Amendment retaliation claim, there is no federal question jurisdiction, there is no diversity jurisdiction, and the Court lacks jurisdiction.

**VIII.  Each Plaintiff fails to satisfy the third element requiring a causal connection between the retaliatory actions and the adverse effect on speech.**

Each Plaintiff fails to allege the third required element, that there is "a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett*, 423 F.3d at 1250. "[P]laintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that

the plaintiff was injured—the motive must *cause* the injury." *Id.* (original emphasis). "[I]t must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* If the government takes adverse action against someone based on an official's prohibited motive, but there are non-retaliatory grounds that cause the adverse consequences, then retaliatory animus is not the "but-for" cause of the injury. *Id.*

Each Plaintiff merely alleges that in violation of his First Amendment right to free speech, he was constructively terminated. *See* ECF No. 1 ¶¶ 94, 117. Moreover, Plaintiffs fail to adequately allege retaliatory conduct of the Trust itself and, as set forth herein, they fail to satisfy the *Monell* requirements to state a claim against the Trust for individual employees' conduct.

Each Plaintiff fails to specify his alleged protected speech and fails to allege a specific act of retaliation by the Trust allegedly *caused* by such speech. Plaintiffs' failure to allege a causal connection is compounded by their failure to allege that they engaged in protected speech because their "certain disclosures" fell within their official job duties. Plaintiffs' failure to allege a specific act of retaliation of the Trust based on alleged protected speech further compounds the inadequacy of their First Amendment retaliation claim. Accordingly, Counts 1 and 3 should be dismissed.

IX. **Each Plaintiff fails to state a claim for violation of the FWA because he fails to allege that he exhausted his available administrative remedies, which is a statutory prerequisite to filing suit.**

Each Plaintiff claims constructive termination and denial of compensation under the FWA (ECF No. 1 ¶¶ 104, 127), however, each fails to allege exhaustion of administrative remedies, which is a statutory prerequisite to filing suit under § 112.3187(8)(b), Florida Statutes. Plaintiffs were required to exhaust their administrative remedies before bringing this action. *See, e.g.*, *Titus v. Miami Dade Cty.*, 757 Fed. Appx. 824, 827 (S.D. Fla. 2018) (granting summary judgment for county because "Plaintiff was required to avail himself first of that administrative remedy before

seeking relief in the courts."); *DeCarlo v. Town of W. Miami*, 49 So. 2d 596, 597 (Fla. 1950) ("Having failed to exhaust her administrative remedies, the plaintiff's suit was prematurely filed, and there was no error in dismissing it.").

The City's Civil Service Board satisfies the statutory requirements for an impartial administrative remedy. *Pino v. City of Miami*, 315 F. Supp. 2d 1230, 1251 (S.D. Fla. 2004) ("all whistle-blower complaints brought by civil service employees in the City of Miami may be heard by the Civil Service Board, regardless of the nature of the adverse employment action."); *Igwe v. City of Miami*, 300 So. 3d 279, 282 (Fla. 3d DCA 2019) ("This Court has repeatedly held that the Board satisfies the procedural requirements in the Act for impartial administrative review.").

With respect to the FWA's pre-suit exhaustion requirement, each Plaintiff concedes he "did not file a written grievance with the executive secretary of the City of Miami stating the nature of his grievance or requesting a hearing with the city of Miami's civil service board." *See* ECF No. 1 ¶¶ 105, 128. Each Plaintiff claims entitlement to bypass the administrative remedy and circumvent the exhaustion requirement because "[f]iling such a grievance or requesting such a hearing would have been futile". *See* ECF No. 1 ¶¶ 106, 129. However, to allege futility, a claimant must make a "clear and positive showing of futility." *Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990). Plaintiffs fail to do so, and their FWA claims should be dismissed.

Each Plaintiff alleges that pursuit of an administrative remedy before the Board would have been futile based on the following: (a) the Board presents its findings and recommendations to the City Manager; (b) the City Manager is biased against each Plaintiff because he and his office are involved in the misappropriation of Trust assets by accepting funds paid by the Trust to Carollo's District 3 event; (c) the City Manager is a close confidant of Carollo and has worked with Carollo to both pursue with and cover up numerous acts by Carollo that violated the City Charter and

constitution; and (d) under the City Charter, the City Manager recommends a course of action to the City Commissioners. *Id.* ¶¶ 106, 129. As a final reason, Suarez and Canto allege (*id.*):

> City Commissioner Carollo is biased against Mr. Suarez because Mr. Suarez disclosed the his [sic] misconduct; and Commissioner Carollo is the moving force behind the retaliation against Mr. Suarez. Mr. Carollo has demonstrated this bias on numerous occasions, including *sua sponte* making baseless defamatory attacks against Mr. Suarez; instructing personnel to directly undermine Suarez's ability to perform as executive director; preemptively interviewing personnel to replace Mr. Suarez; and reassigning or coercing various employees to resign that worked and supported Mr. Suarez.
> City Commissioner Carollo is biased against Mr. Canto because Mr. Canto disclosed the Trust's misconduct; and Commissioner Carollo is the moving force behind the retaliation against Mr. Canto. Mr. Carollo has demonstrated this bias on numerous occasions, including *sua sponte* making baseless defamatory attacks against Mr. Canto.

These alleged facts do not constitute a "clear and positive showing of futility." *Springer*, 908 F.2d at 901. Plaintiffs allege that the City Manager and one Commissioner are biased against them. *See* ECF No. 1 ¶¶ 106, 129. However, based on Plaintiffs' allegations, ultimately the final decision maker is *the Commission as a whole*, not one Commissioner or the City Manager. *See* ECF No. 1 ¶¶ 106(d) ("Ultimately, under the City of Miami's Charter, the City Manager recommends course of action to the City Commissioners."), 129(d) (same). Action by the Commission requires a majority vote of the five Commissioners, not just one, and the City Manager has no vote. Plaintiffs do not and cannot allege that the Commission as a juridic body is biased against them.

Accordingly, based on Plaintiffs' allegations, their FWA claims (Counts 2 and 4) should be dismissed for failure to satisfy statutory conditions precedent.

### X.   Each Plaintiff fails to state a claim for FWA violation because he fails to allege the requirements of § 112.3187(4), (5), (6), and (7), Florida Statutes.

Each Plaintiff fails to state an FWA claim because each fails to adequately allege the statutory requirements. "To prevail, a plaintiff must meet the separate requirements set out in the statute's subsections (4), (5), (6), and (7). Failing to meet the requirements of any one of these

subsections defeats a claim." *Perez v. City of Opa-Locka*, No. 22-20748-Civ-Lenard/Louis, 2023 U.S. Dist. LEXIS 166732, *37, 2023 WL 6121896 (S.D. Fla. Sept. 19, 2023) (citation omitted).

Section 112.3187(4) requires a "disclosure of information." As set forth above, Plaintiffs fail to adequately allege the speech at issue. *See* ECF No. 1 ¶¶ 89, 112 ("certain disclosures"). Therefore, they fail to satisfy this statutory requirement.

Section 112.3187(5) requires the disclosed information to include either: (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare. (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor. Plaintiffs' allegations that they made "certain disclosures" are insufficient, and alleged disclosures concerning unpermitted work, changing the Trust's method of collecting fees or accounting and auditing practices, and the Trust's storage of medicines are inadequate, as they do not rise to the level of violations of law or gross mismanagement. Plaintiffs' sprinkling in statutory terms and hyperbole is insufficient. *See* ECF No. 1 ¶¶ 90, 113. *See Friedman v. Town of Pembroke Park*, No. 0:24-cv-60241-Leibowitz/Hunt, 2024 U.S. Dist. LEXIS 207812, *6, 2024 WL 4802684 (S.D. Fla. Nov. 15, 2024) (under § 112.3187(5), "the Court finds that Plaintiff's disclosures fail to meet the requirements of statutorily protected expression.").

Section 112.3187(6) requires the disclosure to be made to a state or local agency or official or federal entity with authority to investigate or remedy any alleged impropriety. Plaintiffs' vague allegations that they made "certain disclosures" to the attorney for the Trust, members of the Board of Trustees, and the Assistant City Attorney assigned to the Trust, and Suarez's allegations that he

17

participated in an Internal Affairs investigation as to items in storage, are insufficient. *See* ECF No. 1 ¶¶ 50-52, 89-91, 99, 112-114.

Section 112.3187(7) requires the disclosure to be made in one of several specific ways, none of which are alleged by Plaintiffs.

Having failed to allege the requirements of § 112.3187(4), (5), (6), and (7), Florida Statutes, Plaintiffs fail to plausibly state a state a claim for a FWA violation. *Perez*, 2023 U.S. Dist. LEXIS 166732, *37 ("Failing to meet the requirements of any one of these subsections defeats a claim.").

To state a prima facie FWA retaliation claim, a plaintiff must allege (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal relation. *Fernandez v. Bal Harbour Vill.*, 49 F.Supp.3d 1144, 1149 (S.D. Fla. 2014). Plaintiffs' FWA claims thus fail due to inadequate allegations of protected activity, retaliation by the Trust, and causation, as set forth above. Plaintiffs merely allege that in retaliation for disclosures and participation in an investigation, they were constructively terminated. *See* ECF No. 1 ¶¶ 103, 126.

**XI.    Each Plaintiff fails to state a claim for constructive discharge because he has not adequately alleged his working conditions were so intolerable that a reasonable person in his position would have been compelled to resign.**

Each Plaintiff's vague and conclusory allegations are insufficient to satisfy the high burden to allege constructive discharge. In *Friedman*, 2024 U.S. Dist. LEXIS 207812, at *15-16, the court dismissed constructive discharge claims for First Amendment retaliation and violation of the FWA, and explained the high burden on the plaintiff to state such a claim:

> To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were "so intolerable that a reasonable person in [her] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). The burden of proof is quite high and this "onerous task" "requires pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858-59 (11th Cir. 2023) (citing *Bryant v. Jones*, 575 F.3d 1281, 1298-99, 1307 (11th Cir. 2009)). Plaintiff in the instant case has failed to meet that

high burden.

Each Plaintiff fails to allege "pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim." Suarez alleges Carollo started isolating him, and worked to undermine him. *See* ECF No. 1 ¶¶ 64-71. Suarez and Canto allege they were "attacked, defamed, and constructively discharged from the Trust, leading to their departures." *See* ECF No. 1 ¶ 63. Plaintiffs do not allege physical attacks but rather "defamatory attacks" based on Carollo's statements at a December 9, 2024 Trust Board Meeting. *See* ECF No. 1 ¶¶ 72-77. However, Plaintiffs fail to identify a specific statement at that meeting, and Plaintiffs' attendance and participation at the meeting was within their official job duties.

Plaintiffs' vague and conclusory allegations are insufficient to meet their high burden to allege constructive discharge. *See, e.g.*, *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 Fed. Appx. 789, 798 (11th Cir. 2020) (affirming dismissal where plaintiff "has not pled facts sufficient to support a claim for constructive discharge. … [T]he allegations in Moore's complaint are extremely vague: most do not reference specific dates or circumstances in which the allegedly discriminatory acts occurred. … She has alleged numerous additional discriminatory acts without mentioning perpetrators or dates when these acts occurred."); *Bienaime v. Mia.-Dade Cnty.*, 23-20079-Civ-Martinez-Sanchez, 2024 U.S. Dist. LEXIS 195615, *11 (S.D. Fla. Oct. 25, 2024) (plaintiff alleged she was severely harassed by her supervisors, sent for an evaluation, and forced to resign after she made complaints; court found the allegations "conclusory and fall woefully short of the pleading standard"); *Gomez*, 2020 U.S. Dist. LEXIS 88268, at *5-9 (citation and quotations omitted) ("Plaintiff also fails to allege facts showing that she suffered an adverse employment action based on a constructive discharge theory, which requires harassment or discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign. Nowhere … does Plaintiff allege facts showing such severe conduct.").

19

### XII.   Canto lacks standing to sue the Trust for an accounting.

Canto alleges he is entitled to challenge Trust expenditures based on standing as a taxpayer and resident of Miami-Dade. *See* ECF No. 1 ¶¶ 138-139. In *Solares v. City of Miami*, 166 So. 3d 887, 888 (Fla. 3d DCA 2015) (citations omitted), the court explained the standing requirements:

> [T]he Florida Supreme Court has repeatedly held that citizens and taxpayers lack standing to challenge a governmental action unless they demonstrate either a special injury, different from the injuries to other citizens and taxpayers, or unless the claim is based on the violation of a provision of the Constitution that governs the taxing and spending powers.

Here, Canto fails to allege a special injury, different from the injuries to other citizens and taxpayers, or a claim based on the violation of a provision of the Constitution that governs the taxing and spending powers. *Solares*, 166 So. 3d at 888. Instead, Canto cites § 8 of the Florida Constitution (*see* ECF No. 1 ¶ 132), which does not confer standing. *St. John Medical Plans v. Gutman*, 696 So. 2d 1294, 1295 (Fla. 3d DCA 1997), *aff'd*, 721 So. 2d 717 (Fla. 1998) (Fla. Const. art. II, § 8, is not self-executing, and it confers standing on the State of Florida, not on individual citizens). Canto further cites the City Charter (Citizens Bill of Rights) (*see* ECF No. 1 ¶ 133), which also does not confer standing. *Solares*, 166 So. 3d at 888-889 ("a city charter does not rise to the level of the Florida Constitution for purposes of creating an exception to standing. Unlike the taxing and spending provisions of the Constitution, a city charter cannot expand or contract the principle of standing which ultimately sounds in the express separation of powers provision of Article II, Section 3 of the Florida Constitution.").

WHEREFORE, Defendant, The Bayfront Park Management Trust, Inc., respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint, dismiss the Complaint with prejudice, and grant further relief as the Court deems equitable and proper.[5]

---

[5] Defendant incorporates by reference all arguments and positions of other Defendants in their Motions to Dismiss, if applicable.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of April, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY FELDMAN
   & HOTTE | AWERBACH COHN PEREZ
*Counsel for The Bayfront Park Management Trust, Inc.*
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile:  (305) 854-0508
Email:  map@khllaw.com
        lg@khllaw.com
        mschneider@khllaw.com
        eservicemia@khllaw.com

By:_____ */s/ Mason A. Pertnoy*_____
Mason A. Pertnoy, Esq.
Florida Bar No. 18334

21

## SERVICE LIST

| | |
|---|---|
| **Jeffrey W. Gutchess, Esq.**<br>AXS Law Group PLLC<br>2121 N.W. 2nd Avenue, Suite 201<br>Miami, FL 33127<br>Telephone: (305) 297-1878<br>Email: jeff@axslawgroup.com<br>sam@axslawgroup.com<br>eservice@axslawgroup.com<br>*Counsel for Plaintiffs* | **Matthew Jay Rhodes, Esq.**<br>Rhodes Law Firm LLC<br>P.O. Box 66073<br>Birmingham, Alabama 35266<br>Email: rhodes@rhodesllc.com<br>*Pro Hac Vice Counsel for Plaintiffs* |
| **Marc D. Sarnoff, Esq.**<br>**Frank A. Zacherl, Esq.**<br>Shutts & Bowen LLP<br>200 South Biscayne Boulevard, Suite 4100<br>Miami, FL 33131<br>Telephone: (305) 347-7305<br>Email: MSarnoff@shutts.com<br>FZacherl@shutts.com<br>MGutierrez@shutts.com<br>*Counsel for Defendants Joe Carollo and Javier Banos* | |