**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-20317-CIV-LENARD/ELFENBEIN**

JOSE SUAREZ,

Plaintiff,

v.

THE BAYFRONT PARK MANAGEMENT

TRUST INC. and JOE CAROLLO,

Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants, The Bayfront Park Management Trust, Inc. ("Bayfront" or the "Trust") and

Joe Carollo ("Carollo") (collectively, "Defendants"), by and through undersigned counsel,

respectfully move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the

Amended Complaint (D.E. 64) filed by Plaintiff Jose Suarez ("Suarez" or "Plaintiff").

**INTRODUCTION**

On March 23, 2026, this Court entered its Omnibus Order (D.E. 57) granting Defendants'

Motions to Dismiss the original Complaint, dismissing it in its entirety without prejudice, and

granting Plaintiff leave to amend. The Court's Order provided detailed guidance on the

deficiencies in the original Complaint and made specific findings of law regarding the scope of

protected speech, municipal liability, exhaustion of administrative remedies, and qualified

immunity. Plaintiff filed his Amended Complaint on April 6, 2026.

The Amended Complaint has dropped Plaintiff Jose Canto and Defendant Javier Baños

from the case and abandoned the Claim for Accounting, acknowledging the deficiencies identified

by this Court. However, the remaining two Counts [the 42 U.S.C. § 1983 First Amendment retaliation claim and the Florida Whistleblower Act ("FWA") claim under Fla. Stat. § 112.3187] still suffer from fatal deficiencies that warrant dismissal.

Four independent grounds require dismissal:

First, Plaintiff's own Amended Complaint forecloses his claim of protected "private citizen" speech. This Court's Omnibus Order found that the *only* "plausible" protected speech in the original Complaint was Suarez's reporting of drugs in the van, and that this speech was protected because Suarez appeared to have "spoken out as a citizen." D.E. 57 at 15. The Amended Complaint now eliminates that finding. At Paragraph 64, Suarez alleges that his "statements and disclosures did not disrupt the function of the Bayfront Trust, but rather were in furtherance of the Trust's interests as the Executive Director, 'as the chief executive officer of the trust.'" D.E. 64 ¶ 64 (citing City Charter and Code, Chapter 38, Article III § 38-105). In other words, Plaintiff's own pleading now concedes that his speech was made in his official capacity as the Trust's chief executive officer, precisely the category of speech that *Garcetti v. Ceballos* holds is unprotected by the First Amendment. The call to Miami Police was made from the Trust's offices, about property stored at the Trust's facilities, through the Trust's attorney. D.E. 64 ¶¶ 18-21. There was no private speech. Plaintiff's own amended allegations foreclose the claim.

Second, the factual predicate for Plaintiff's claims (the discovery of controlled substances in the van) is contradicted by the very documents Plaintiff references. The van was lawfully procured through the City Attorney's office under emergency procurement procedures, and the sales invoice specifically excluded pharmaceuticals. Suarez himself admitted on videotape on April 30, 2024, that he did not know what was in the boxes and had never looked inside them. The Miami Police Department's Internal Affairs investigation, which Suarez references throughout his

Amended Complaint, concluded with the property unit employees determining that the vials were empty and no drugs were found. Moreover, before the IA investigation began, in violation of Florida's Public Records law[1], Suarez directed the destruction of the Trust's electronic and physical inventory of the van's contents, and then a replacement inventory - no longer in the care, custody, or control of the Trust – somehow appeared on the day of Suarez's IA interview. These facts, drawn from documents central to and referenced in the Amended Complaint, fatally undermine the sole basis upon which this Court previously found protected speech.

Third, Plaintiff's futility argument for failing to exhaust administrative remedies under the FWA is predicated on a demonstrably false representation about the City of Miami's Civil Service Rules. Plaintiff alleges at Paragraph 77(d) that "the City Manager recommends the course of action to the City of Miami Commissioners." This is simply untrue. Under Section 14.3 of the Civil Service Rules, the Civil Service Board makes written findings to the City Manager, who enters a final order affirming, reversing, or modifying the action. There is no appeal to the City Commission. Carollo, as a City Commissioner, would have no role whatsoever in the Civil Service Board process. The process terminates with the City Manager's order, from which the employee may seek judicial review in state circuit court. Because the futility argument rests on a false premise, Suarez's FWA claim fails for non-exhaustion of administrative remedies.

---

[1] *See* §119.021, Fla. Stat. ("(1) Public records shall be maintained and preserved as follows: (a) All public records should be kept in the buildings in which they are ordinarily used."); §119.10 (2), Fla. Stat. ("Any person who willfully and knowingly violates: (a) any of the provisions of this chapter commits a misdemeanor of the first degree"); 1991 Op. Att'y Gen. Fla. 118 (1991) ("A state attorney may prosecute suits charging public officials with violation of Florida's Public Records Law, pursuant to his or her statutory authority to appear on behalf of the state in all suits in which the State of Florida is a party.").

Plaintiff has already had one opportunity to amend. His Amended Complaint does not cure the deficiencies this Court identified - it actually compounds them by pleading Plaintiff out of the one claim this Court found potentially viable. Dismissal with prejudice is warranted.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural History

Plaintiff Jose Suarez and former Plaintiff Jose Canto filed their original Complaint on January 21, 2025, alleging five counts: (1) Suarez's § 1983 First Amendment retaliation claim; (2) Suarez's FWA claim; (3) Canto's § 1983 claim; (4) Canto's FWA claim; and (5) Canto's claim for accounting. D.E. 1.

Defendants filed Motions to Dismiss on April 1, 2025. D.E. 13; D.E. 14. On March 23, 2026, this Court granted the Motions and dismissed the Complaint in its entirety without prejudice. D.E. 57. The Court's Order made several critical findings:

First, the Court found that "the only protected speech the Court can discern from the Complaint follows Suarez's discovery of illicit drugs inside the Van." D.E. 57 at 12. The Court found that Suarez's other activities (eliminating the money room, hiring Canto, reducing Macro Films' payments, questioning expenditures, etc.) constituted speech made within the scope of his official duties as Executive Director and were therefore not protected. *Id.* at 11-12.

Second, the Court found that Suarez's futility argument regarding exhaustion of administrative remedies was "plausibly alleged" based on the representation that a civil service complaint would "ultimately be heard by, among others, Carollo." D.E. 57 at 23-24. As demonstrated below, this representation was based on a material misstatement of the Civil Service Rules.

Plaintiff filed his Amended Complaint on April 6, 2026, dropping Canto as a plaintiff, Baños as a defendant, and the accounting claim. D.E. 64.

**B. The Documents Referenced in the Amended Complaint**

Under Eleventh Circuit precedent, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the document is (1) central to the plaintiff's claim, and (2) its authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002). Additionally, federal courts can take judicial notice of the laws of every state, including municipal ordinances and civil service rules. *Continental Technical Services, Inc. v. Rockwell Intern. Corp.*, 927 F.2d 1198 (11th Cir. 1991) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)); *Kreyer v. Carnival Corp.*, No. 19-20398-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 218666, *11 (S.D. Fla. Dec. 18, 2019). Public records, including vehicle titles and official procurement documents, are also subject to judicial notice under Federal Rule of Evidence 201.

The following documents, which are central to Plaintiff's claims and referenced throughout the Amended Complaint, are attached hereto and incorporated by reference:

> **Exhibit A:** City of Miami Civil Service Rules, including Sections 14.3 and 14.4 governing the appeal process (properly considered at this stage based on the allegations of ¶77)
>
> **Exhibit B:** Email from Senior Assistant City Attorney Pablo R. Velez to Interim Executive Director Miguel Ferro, dated September 28, 2023, approving emergency procurement of the van pursuant to Section 18-90 of the City Code (properly considered at this stage based on the allegations of ¶¶ 13-24)
>
> **Exhibit C:** Invoice from Rex Mobile Vet LLC for the 2007 Ford E450, dated September 28, 2023, in the amount of $115,000, expressly excluding pharmaceuticals (properly considered at this stage based on the allegations of ¶¶ 13-24)
>
> **Exhibit D:** Comparable vehicle sales demonstrating the market value of converted mobile veterinary vans (properly considered at this stage based on the allegations of ¶¶ 13-24)
>
> **Exhibit E:** Miami Police Department Internal Affairs Investigation Report (Case No. T24-103), chain of custody documentation for the 12 boxes of property

recovered from Bayfront offices, and police report for case no. 2404300029888 (properly considered at this stage based on the allegations of ¶¶ 18-24)

**Exhibit F:** Florida vehicle title for the 2007 Ford E450, VIN 1FDXE45S77DB2906 (properly considered at this stage based on the allegations of ¶¶ 13-24)

**Exhibit G:** Declaration of Milagros Dominguez, dated February 12, 2025, attesting to the destruction of the van inventory at Suarez's direction (properly considered at this stage based on the allegations of ¶¶ 18-19)

**Exhibit H:** Declaration of Santravia Butler, dated February 12, 2025, corroborating the inventory destruction and describing the delivery of a new different inventory on the day of Suarez's IA interview (properly considered at this stage based on the allegations of ¶¶ 18-24)

**Exhibit I:** Miami Police Department Property Release Letter to Jose Suarez, dated May 29, 2024, Case No. 2404300029888, listing 12 boxes of "Veterinary Supplies" in police custody and advising that unclaimed property will be disposed of (properly considered at this stage as a public record subject to judicial notice under Fed. R. Evid. 201, and as a document central to the allegations of ¶¶ 18-24)

## **LEGAL STANDARD**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). While the Court accepts well-pleaded factual allegations as true, it need not accept allegations that are contradicted by documents properly before the Court. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007). Nor is the Court obligated to accept allegations

that are contradicted by a plaintiff's own pleading. Where a complaint's factual allegations, taken as a whole, negate an essential element of the claim, dismissal is appropriate. *See Lawrence v. United States*, 597 Fed. Appx. 599, 602 (11th Cir. 2015).

**ARGUMENT**

**I. COUNT I: THE AMENDED COMPLAINT FAILS TO STATE A § 1983 FIRST AMENDMENT RETALIATION CLAIM**

   **A.        *Carollo Is Entitled to Qualified Immunity***

In the Omnibus Order, this Court denied Carollo's qualified immunity defense but stated that "[s]hould Carollo and Banos wish to set forth a qualified immunity argument in a future motion to dismiss or a motion for summary judgment, the Court will revisit the issue at that point." D.E. 57 at 27. Defendants respectfully renew Carollo's qualified immunity defense.

As demonstrated above, the Amended Complaint's factual predicate for protected speech is contradicted by the documents Plaintiff references, and Plaintiff has pleaded himself out of private-citizen speech through Paragraph 64. If the Court finds that the Amended Complaint fails to plausibly allege protected speech, then *a fortiori* there can be no violation of a clearly established right, and qualified immunity attaches. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Even assuming the Amended Complaint adequately alleged protected speech, Carollo was acting within his discretionary authority as Chairman of the Board of Trustees when he took the employment-related actions alleged. The personnel decisions described (transferring employees, reassigning duties, conducting Board meetings, evaluating the Executive Director's performance) fall squarely within the scope of a Board Chairman's discretionary functions. Suarez has not identified "materially similar" precedent establishing that such actions constituted a constitutional violation under the specific facts of this case. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012)). The "relevant, dispositive inquiry" is "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). The salient question is "whether the state of the law . . . gave [the official] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Vinyard*, 311 F.3d at 1350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Suarez "must demonstrate that the contours of the right were clearly established" in one of three ways: (1) a prior case with materially similar facts; (2) a broader, clearly established principle that controls the novel facts; or (3) conduct so obviously violative of the Constitution that prior case law is unnecessary. *Loftus*, 690 F.3d at 1204 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012)). Suarez satisfies none of them. He has identified no case with materially similar facts, no broad principle that would govern this situation, and the facts here (a Board Chairman taking routine personnel actions after an employee reported property that turned out to contain no drugs) do not "so obviously violate the constitution that prior case law is unnecessary." *Id.*

Moreover, the *Pickering* balance reinforces this conclusion. The Supreme Court has instructed that "the time, place of the employee's expression and the context in which the dispute arose" are relevant. *Pickering*, 391 U.S. at 568. Here, by Plaintiff's own allegations, every aspect of his speech occurred in his role as Executive Director: using Trust facilities, communicating through the Trust's attorney, about Trust property, all regarding substances that the IA

investigation ultimately determined were not present. Notably, the IA investigation itself was not initiated by Suarez's speech but by Commissioner Pardo's office, based on community reports. See Exhibit E. No reasonable official in Carollo's position would have understood that the personnel actions he took in this context violated a clearly established constitutional right. *See Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338 (11th Cir. 2013).

### B.      Plaintiff's Own Allegations Establish That His Speech Was Made in His Official Capacity, Not as a Private Citizen

This Court's Omnibus Order found that Suarez's reporting of the drugs and participation in the IA investigation constituted protected speech because Suarez "appears to have spoken out as a citizen concerned about illegal drugs." D.E. 57 at 15. Critically, the Court reached this conclusion in the context of the *original* Complaint. The Amended Complaint now contains an allegation that was not in the original Complaint, and it is fatal to Plaintiff's claim.

At Paragraph 64, Suarez alleges:

> *The statements and disclosures did not disrupt the function of the Bayfront Trust, but rather were in furtherance of the Trust's interests as the Executive Director, "as the chief executive officer of the trust[.]" City Charter and Code, Chapter 38, Article III § 38-105.*

D.E. 64 ¶ 64.

This is a critical allegation. Suarez expressly characterizes *all* of his "statements and disclosures, without limitation or exception, as having been made "in furtherance of the Trust's interests as the Executive Director" and in his capacity "as the chief executive officer of the trust." *Id.* He does not carve out the drug reporting. He does not allege or state that he acted as a private citizen. He invokes the very statute that defines his official role. This is precisely the kind of speech that *Garcetti* holds is unprotected:

> We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The Eleventh Circuit has held that *Garcetti* "must be read narrowly to encompass speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment." *Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1162 (11th Cir. 2015) (emphasis added). Suarez's Paragraph 64 uses that exact formulation: "in furtherance of the Trust's interests as the Executive Director." D.E. 64 ¶ 64.

The factual allegations confirm the official-capacity nature of the speech. The boxes were discovered at the Trust's facilities during a "storage assessment," an official duty. D.E. 64 ¶ 18. Suarez "immediately alerted the Trust's attorney." D.E. 64 ¶ 20. Suarez and the Trust's attorney "agreed to inform the Police." D.E. 64 ¶ 21. The call to the police was made from the Trust's offices regarding property stored at the Trust's facilities, through the Trust's attorney, a member of the City Attorney's office. D.E. 64 ¶¶ 18-21.  Every step of the alleged "protected speech" was taken through official channels, using official resources, in the capacity of the Trust's chief executive.

A plaintiff may plead himself out of court. *See Lawrence*, 597 Fed. Appx. at 602. That is what has happened here. By alleging that his disclosures were made "in furtherance of the Trust's interests as the Executive Director," Suarez has pleaded facts that negate the "private citizen" element of his First Amendment retaliation claim. This Court should take Plaintiff at his word.

### C.   The Allegations Regarding Controlled Substances in the Van Are Contradicted by Documents Plaintiff References

Even if the Court were to look past Plaintiff's Paragraph 64 concession, the factual predicate for his "protected speech" - the discovery of controlled substances in the van - is independently contradicted by the documents central to and referenced in the Amended Complaint.

**1. The Van Was Lawfully Procured Through the City Attorney's Office.**

The Amended Complaint alleges at Paragraph 18 that Bayfront paid $115,000 for a 2007 Ford E450 van from Rex Mobile Vet LLC and that the van had a fair market value of approximately $30,000. D.E. 64 ¶¶ 14-15. The procurement documents demonstrate otherwise. Senior Assistant City Attorney Pablo R. Velez approved the emergency acquisition pursuant to Section 18-90 of the City Code, directing that the Board ratify the transaction at its next available meeting. See Exhibit B. Three comparable sales of converted mobile veterinary vans demonstrate the $115,000 price was within market range for a fully equipped mobile veterinary clinic with examination and operating tables, patient monitoring equipment, and laboratory equipment. See Exhibit D. Plaintiff's allegation of $30,000 fair market value reflects a base, unconverted cargo van, not the custom-built LaBoit veterinary clinic that was actually purchased. See Exhibit C.

**2. The Invoice Specifically Excluded Pharmaceuticals.**

The invoice from Rex Mobile Vet LLC expressly states that the sale did not include pharmaceuticals: "NOT Included: MinXRay Digital Radiograph Processor, *Pharmaceuticals*." See Exhibit C (emphasis added). The document underlying Plaintiff's central allegation affirmatively shows that <u>no pharmaceuticals were included</u> in the transaction.

**3. Suarez Admitted He Had No Personal Knowledge of Drugs.**

On April 30, 2024, when Suarez contacted the Miami Police regarding boxes at the Bayfront offices, he was videotaped <u>by the Officer's chest camera</u> stating, effectively, that he did not know what was in the boxes. In his IA interview, when he was asked if he saw any medication in the boxes he saw, he answered that he did not. *Id.* The police incident report (Case No. 2404300029888) classifies the event as an "Information Report (Non-Criminal)" and describes the contents as "veterinary equipment meant to be used for a pet drive." *Id.* A plaintiff cannot plead

conclusions that are directly contradicted by documents central to his claim. *See Griffin Indus.*, 496 F.3d at 1205–06.

### 4. The IA Investigation Found No Drugs.

The Internal Affairs investigation that Suarez references throughout his Amended Complaint (D.E. 64 ¶¶ 21-22) concluded with the property unit employees who processed the 12 boxes determining that the vials were empty and no drugs were found. See Exhibit E. The chain of custody documentation confirms the boxes were maintained in police custody from April 30, 2024, through their ultimate destruction as abandoned property on November 4, 2024. *Id.* On May 29, 2024, the Miami Police Department sent Suarez a Property Release Letter (Case No. 2404300029888) advising him that the 12 boxes of "Veterinary Supplies" were in police custody and available for pickup. See Exhibit I. The letter informed Suarez that "[a]ll property must be claimed within 90 days from the date of this letter" or it would be "disposed of as prescribed by law." Id. Suarez took no action. He did not claim the property, did not seek a court order to preserve it, did not petition the police department, and simply allowed the standard destruction process to proceed. The property was ultimately destroyed on November 4, 2024, as abandoned property in accordance with Fla. Stat. § 705.103. See Exhibit E. This inaction is wholly inconsistent with a genuine belief that the boxes contained dangerous controlled substances.

### 5. Suarez Directed the Destruction of the Van Inventory and Substituted a Replacement.

The Amended Complaint's allegations regarding the van's contents are further undermined by Suarez's own conduct. Prior to the commencement of the IA investigation, Suarez instructed Trust employee Milagros Dominguez to delete the electronic inventory of the van's contents from the Trust's computer and to shred the physical copy, leaving no trace of the original inventory either electronically or in hard copy. See Exhibit G at ¶ 9. This instruction was given in the

presence of another Trust employee, Amaury Hernandez. *Id.* Santravia Butler, the Trust's Executive Administrator, confirmed that Suarez informed her that the electronic inventory had been deleted. See Exhibit H at ¶ 7.

On the very day of Suarez's IA interview, Suarez's wife delivered a manila envelope to the Trust offices addressed to Suarez. See Exhibit H at ¶ 8. Two days later, Suarez gave Ms. Butler a manila folder (believed to contain the inventory) and asked her to file it in her desk. *Id.* at ¶ 9. This new inventory, which was no longer in the care, custody, or control of the Trust and whose provenance is unknown, appeared only after the original was destroyed and only in connection with the IA investigation.

The individual who now claims the van contained controlled substances is the same individual who directed the destruction of the only contemporaneous inventory of the van's actual contents and then substituted a replacement of unknown origin. A court need not accept allegations whose factual predicate has been systematically dismantled by the plaintiff's own conduct as reflected in documents properly before the Court.

Taken together, these facts demonstrate that Plaintiff's core allegation of "discovering controlled substances" is unsupported by any competent evidence and is affirmatively contradicted by the documents upon which his claims depend.

### D.     *The Remaining Alleged Speech Was Made in Suarez's Official Capacity and Is Not Protected*

This Court has already ruled on this issue. The Omnibus Order found that Suarez's activities relating to eliminating the money room, hiring Canto to reform accounting practices, reducing payments to Macro Films, questioning the yacht charter, and other operational reforms all constituted speech made within the scope of his official duties as Executive Director. D.E. 57 at 11-12. Under *Garcetti*, 547 U.S. at 421, such speech is not protected.

The Amended Complaint does not cure this deficiency. It recites the same operational and managerial activities - eliminating the money room (D.E. 64 ¶ 10), hiring a finance director (D.E. 64 ¶ 11), and confronting accounting irregularities (D.E. 64 ¶¶ 12-17) - that this Court has already found to be official-capacity speech. These allegations do not, and cannot, support a First Amendment retaliation claim.

### E. Plaintiff fails to state a claim against the Trust under Monell

As the Omnibus Order recognizes if "Plaintiff[] wishes to level a claim against Bayfront, [he] will have to do so in the complaint by setting forth facts that plausibly allege Bayfront is liable under a *Monell* theory. *See* D.E. 57 ¶¶ 21. Plaintiff alleges the Trust is a limited agency and instrumentality of the City pursuant to the City of Miami Code. *See* D.E. 64 ¶¶ 59 (quoting City of Miami Code Article III § 38-101 ("There is hereby created and established a limited agency and instrumentality of the city to be known as the 'Bayfront Park Management Trust.'"). "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty, Ga.,* 335 F.3d 1326, 1329 (11th Cir. 2003). One such limitation is that a municipality can only be liable under § 1983 for its own acts, and not on the basis of respondeat superior. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694-695 (1978); *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir. 1991).

To impose § 1983 liability on a municipality, a plaintiff must show:

> (1) that his constitutional rights were violated;
>
> (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and
>
> (3) that the policy or custom caused the violation.

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Page 14

Here, the Trust is being sued under the doctrine of *respondeat superior* for alleged actions of its trustees. *See, e.g.*, D.E. 64 ¶¶ 4, 8, 23, 27, 29-39, and 41-53.   However, Plaintiff's municipal liability claims against the Trust fail because he has not sufficiently pled any policy or custom in the Trust's practices that caused the alleged constitutional violation.  *See Holland v. City of Auburn*, 657 Fed. Appx. 899, 902 (11th Cir. 2016) (court affirmed dismissal of claims against municipality where plaintiff "failed to assert a specific policy or custom that led to the alleged violations"); *Gomez v. City of Doral*, 2020 U.S. Dist. LEXIS 88268, *6-9 (S.D. Fla. May 18, 2020) (court dismissed First Amendment retaliation claim against municipality for failure to adequately allege a custom or practice).; *Lewis v. City of Marietta*, 2023 U.S. App. LEXIS 31423, *6-7, 2023 WL 8234291 (11th Cir. 2023) (affirming dismissal of § 1983 claims against city based in part on failure "to allege a direct causal link between the City's policy or custom and the alleged constitutional violation"); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of § 1983 claim against county where plaintiff failed to "allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability").

Next, "[m]unicipal liability attaches only where the decisionmaker possesses ***final authority*** to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis supplied). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion ... The official must also be responsible for establishing ***final government policy*** respecting such activity before the municipality can be held liable."  *Id.* at 481-483 (emphasis supplied). Final policymaking authority for § 1983 purposes is determined by state and local law.  *Id.* at

481; *Jett v. Dallas Indep. School District*, 491 U.S. 701, 737 (1989) (in determining whether an individual is a final policymaker, courts consider "the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law.").

Here, the relevant City Code provision provides that policymaking authority resides with the City Commission.  *See* City of Miami Code, Chapter 38, Article III § 38-104 ("The trust shall have the power to do all things necessary to direct, manage and maintain Bayfront Park, ***subject at all times to city commission approval*** and any existing contractual obligations.") (emphasis added).  Conspicuously absent from the Amended Complaint are specific facts establishing that Commissioner Carollo, or any other Trustee, was the Trust's final policymaker either pursuant to law or via a delegation of authority.

Accordingly, as a matter of law, Count 1 against the Trust for First Amendment retaliation should be dismissed with prejudice.

## II. COUNT II: THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA WHISTLEBLOWER ACT

### A. Suarez Has Not Exhausted Administrative Remedies, and Futility Does Not Apply

The Florida Whistleblower Act requires plaintiffs to exhaust their administrative remedies prior to filing suit. Fla. Stat. § 112.3187(8). The narrow futility exception applies only where the administrative process would be "entirely illusory." *Igwe v. City of Miami*, 300 So. 3d 279, 282 (Fla. 3d DCA 2019). *Igwe* also requires the employee to strictly follow the prescribed process.

This Court found that Suarez's futility argument was "plausibly alleged" in the Omnibus Order, based on Suarez's representation that a civil service complaint "would ultimately be heard by, among others, Carollo." D.E. 57 at 23-24. The Court relied on the analogy to *Acevedo v. City of Miami*, No. 22-20224-CV, 2024 WL 3856246 (S.D. Fla. July 29, 2024), where the plaintiff's complaint would ultimately be heard by the defendant himself. *Id.* at *4.

However, the Amended Complaint's futility argument is predicated on a material misrepresentation of the City of Miami's Civil Service Rules. At Paragraph 77(d), Plaintiff alleges: "Ultimately, under the City of Miami's Charter, the City Manager recommends [the] course of action to the City Commissioners." D.E. 64 ¶ 77(d). This is factually false.

Section 14.3 of the City of Miami Civil Service Rules, titled "Appeal to Board," provides in relevant part:

> [T]he Board within thirty days shall proceed to hear such appeal. The Board recognizing the disciplinary authority of the administrative head and ready at all times to improve the relationship between employer and employee, shall make its findings in writing to the City Manager for his/her consideration, who shall enter an order affirming, reversing, or modifying the disciplinary action of the Department Director.

See Exhibit A.

The process is clear: (1) the employee files a written appeal within 15 days; (2) the Civil Service Board hears the appeal within 30 days; (3) the Board makes written findings of fact with recommended action to the City Manager; and (4) the City Manager enters a final order affirming, reversing, or modifying the disciplinary action. There is no appeal to the City Commission.  The process terminates with the City Manager's order. From there, the employee may seek judicial review in state circuit court.

This distinction is dispositive. In *Acevedo*, the complaint would "ultimately be heard by" the defendant, a direct participant in the administrative process. But that analogy does not hold. Acevedo was the Chief of Police, and as such was afforded a unique process under City of Miami Charter Section 26, titled "Suspension and removal of chief of police and fire chief." Under that provision, when the Police Chief is suspended, the City Manager "certifies the fact, together with the cause of suspension to the commission within 5 days," and the *Commission* "shall proceed to hear such charges and render judgment thereon, which judgment shall be final." City of Miami

Charter § 26. That is why the *Acevedo* court found futility: the complaint would literally be "heard by" Carollo sitting as a City Commissioner. No other employee, servant, or agent of the City of Miami is afforded that right. Suarez is not the Police Chief. He is a Trust employee whose administrative remedy runs through the Civil Service Board and terminates with the City Manager's order. The City Commission plays no role whatsoever in that process. Carollo would never sit in judgment on Suarez's complaint. The *Acevedo* analogy fails entirely.

Furthermore, Section 14.4 of the Civil Service Rules demonstrates that the Board's proceedings are far from futile. The Board operates under liberal rules of evidence: "Strict rules of evidence, as in courts of law, shall not apply. Evidence is to be admitted at the discretion of the Board and pertinent information considered for the purpose of substantial justice for all parties." Exhibit A, § 14.4(c). Written statements, transcripts, and hearsay evidence are all admissible. *Id.* § 14.4(e). The Board has "full power to prescribe the manner of conduct of its hearings." *Id.* § 14.4(i). The Board's independence, liberal evidentiary rules, and statutory authority to make findings of fact demonstrate that the process is a meaningful avenue for relief.

Even assuming arguendo that City Manager Noriega is biased (D.E. 64 ¶ 77(b)-(c)), the Board itself (which no party controls) conducts the hearing, weighs the evidence, and issues independent findings. Those findings would form part of any record on judicial review in state circuit court. The alleged bias of a single "downstream" official does not render the entire multi-step administrative process "entirely illusory."

Because the Amended Complaint's futility argument rests on a demonstrably false premise - that the Civil Service process ultimately involves the City Commission - the exception does not apply, and Suarez's FWA claim must be dismissed for failure to exhaust administrative remedies.

**B. The Amended Complaint Fails to Adequately Allege Protected Disclosures Under the FWA**

As discussed in Section I above, the factual basis for Suarez's alleged protected speech is undermined both by his own Paragraph 64 concession and by the documents central to his claims. To the extent his FWA claim depends on the same factual allegations as his § 1983 claim, it fails for the same reasons.

Additionally, the FWA requires disclosures be made "to any agency or federal government entity having the authority to investigate, police, manage, or otherwise remedy the violation or act." Fla. Stat. § 112.3187(6). While the Amended Complaint identifies recipients of disclosures, including the Miami Police, the Chairman, the Board, and the Assistant City Attorney (D.E. 64 ¶¶ 58-60), several of these are internal employment communications, not disclosures to agencies with independent investigatory authority.

**C. Plaintiff's alleged speech was not made as a private citizen, and therefore it does not merit application of the Pickering analysis**

As set forth above, Suarez did not engage in protected speech because he did not speak as a private citizen. Accordingly, his alleged speech does not merit application of the *Pickering* analysis. As set forth in *Cotriss v. City of Roswell*, 2022 U.S. App. LEXIS 17941, *22-23, 2022 WL 2345729 (11th Cir. June 29, 2022):

> As a threshold matter, "[t]o qualify as constitutionally protected speech in the First Amendment[] government employment retaliation context," that merits application of the *Pickering* analysis, "the speech must be made by a government employee speaking as a citizen and be on a subject of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1342-43 (11th Cir. 2007) (per curiam) (emphasis omitted). This is because the "Constitution does not insulate" a government employee's "communications from employer discipline" when a government employee makes "statements pursuant to [her] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); *accord Boyce*, 510 F.3d at 1342.

The Amended Complaint does not plausibly allege Suarez was disciplined as a result of protected speech as a private citizen. Rather, the alleged speech involved administrative and operational issues of the Trust within Plaintiffs' job duties including unpermitted work at the Park, changing the Trust's method of collecting fees, accounting and auditing practices, and the Trust's storage of medicines. Alleged disclosures about these matters by Suarez were solely to his superiors in the chain of command, including the attorney for the Trust and members of the Board of Trustees, and in connection with his participation as the Executive Director in an investigation by local government agencies.

Plaintiff fails to adequately allege the Trust's "retaliatory conduct adversely affected the protected speech". *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1255. Plaintiffs do not allege they were deterred or chilled in the exercise of protected activity by alleged retaliatory conduct of the Trust. Moreover, Suarez fails to state a claim against the Trust for its own alleged retaliatory conduct as they fail to satisfy *Monell*. None of the requirements are met, as set forth herein. Having failed to state a First Amendment retaliation claim, there is no federal question jurisdiction, there is no diversity jurisdiction, and the Court lacks jurisdiction. Consequently, this Honorable Court should dismiss Count II of Plaintiff's Amended Complaint with prejudice as any further amendment is futile.

**<u>CONCLUSION</u>**

For all of the foregoing reasons, the Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff has pleaded himself out of his First Amendment claim by expressly characterizing his speech as made "in furtherance of the Trust's interests as the Executive

Director," official-capacity speech that is unprotected under *Garcetti*. The factual predicate for his claims (the discovery of controlled substances) is contradicted by every relevant document: the invoice excluded pharmaceuticals, the police found only medical supplies and empty vials, Suarez admitted on video he had no knowledge of drugs, and Suarez directed the destruction of the original inventory before producing a replacement inventory of unknown provenance. The futility argument for exhaustion of administrative remedies rests on a demonstrably false representation that the City Commission hears civil service complaints.

This is Plaintiff's second bite at the apple. Even with an express roadmap from this Court, the Amended Complaint does not cure the deficiencies previously identified - it compounds them. Defendants respectfully request that this Court dismiss the Amended Complaint with prejudice.

Respectfully submitted,

| | |
|---|---|
| **LYDECKER LLP** | **SHUTTS & BOWEN LLP** |
| 1221 Brickell Avenue, 19th Floor | 200 South Biscayne Boulevard, Suite 4100 |
| Miami, Florida 33131 | Miami, Florida 33131 |
| Telephone: (305) 416-3180 | Telephone: (305) 415-9072 |
| | |
| By: /s/ Forrest Andrews | |
|     Stephen H. Johnson, Esq. | By: /s/ Frank Zacherl |
|     Florida Bar No. 12362 |     Frank A. Zacherl, Esq. |
|     Forrest L. Andrews, Esq. |     Florida Bar No. 0868094 |
|     Florida Bar No. 17782 |     Marc D. Sarnoff, Esq. |
|     shj@lydecker.com |     Florida Bar No. 607924 |
|     fla@lydecker.com |     fzacherl@shutts.com |
|     mpark@lydecker.com |     MSarnoff@shutts.com |
| | |
|     *Counsel for Defendant,* |     *Counsel for Defendant Joe Carollo* |
|     *Bayfront Park Management Trust, Inc.* |     *and Javier Baños* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2026, a true and correct copy of the foregoing was served on all counsel of record via ECMF email.

By: /s/ Frank Zacherl
      Frank A. Zacherl, Esq.